AO 91 (Rev. 11/82)                 **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>RANDALL LEE TATE, JR. and<br>MARQUES ALPHONZE PETTYWRIGHT | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>SA18-035M |
|---|---|

Complaint for violation of Title 18, United States Code, Section 1951(a)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE JAY C. GANDHI | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Santa Ana, California |
|---|---|---|

| DATE OF OFFENSE<br>01/31/2018 – 02/01/2018 | PLACE OF OFFENSE<br>Los Angeles County<br>and elsewhere | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1951(a)]

Beginning no later than January 31, 2018, and continuing to on or around February 1, 2018, in Los Angeles County, and elsewhere, defendants RANDELL LEE TATE, JR., MARQUES ALPHONZE PETTYWRIGHT, and others known and unknown, conspired and agreed to knowingly and intentionally interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a), by robbing a Verizon retail store located at 7056 East Golf Links, Tucson, Arizona.

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB - 5 2018

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**RYAN J. STEARMAN**  /S/<br><br>OFFICIAL TITLE<br>Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives |
|---|---|

Sworn before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>Jay C. Gandhi | DATE<br>February 5, 2018 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA S. Tenley x2829     [REC by AUSA: Detention]

### AFFIDAVIT

I, Ryan J. Stearman, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.    I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since September 2005.  I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office.  In the course of my employment as an ATF Special Agent, I have assisted in and conducted numerous investigations involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms, and burglaries and violent crime to include robberies.  As an ATF SA, I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in conspiracies to commit robberies and burglaries, unlawfully traffic firearms, unlawfully take firearms, unlawfully possess firearms, as well as other criminal activity.  Additionally, I have participated in the collection and seizure of cellular telephone records, firearms records and other types of evidence that documents criminal conspiracies to include activities in both the manufacturing and distribution of controlled substances.

2.    To successfully conduct these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, wire

1

interceptions, cellular telephone analysis, interviews, the utilization of undercover agents and informants, and the review of various databases and records. I have also received training during the course of my employment as an ATF Special Agent in various topics to include but not limited to: robberies affecting interstate commerce, illegal trafficking of firearms, the utilization of informants, the activities of criminal street gangs, asset forfeiture, and conducting surveillance and wire interceptions. Through these investigations, my training and experience, and conversations with other experienced agents and law enforcement personnel, I have become familiar with the methods used by individuals to commit robberies; to smuggle, safeguard, and store firearms; to distribute firearms; and to collect and launder related, illicit proceeds.

## II. PURPOSE OF AFFIDAVIT

3.    This affidavit is made in support of a criminal complaint and arrest warrants charging RANDALL LEE TATE, JR. ("TATE") and MARQUES ALPHONZE PETTYWRIGHT ("PETTYWRIGHT") with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a).

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically

2

indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. STATEMENT OF PROBABLE CAUSE

**A.   Verizon Robbery in Tucson, Arizona on January 31, 2018**

5.   On January 31, 2018 and February 1, 2018, I spoke to ATF SA David Korn who is based in Tucson, Arizona.  SA Korn advised me of the following information, which he obtained based on his personal participation in the investigation of the events described below and his conversations with Tucson Police Department Detective Nichole Harkey:

a.   On January 31, 2018, at or around 7:00 p.m., a Verizon retail store located at 7056 East Golf Links, Tucson, Arizona was robbed.[1]  Two suspects entered the store wearing hooded sweatshirts and gloves.  One was wearing a beanie on his head.  Each was carrying a black duffel bag.  No customers were present.  The suspects directed the Verizon employee to the back office area of the store and zip-tied the employee's hands and feet.

b.   From a safe in the back office area, the suspects took approximately $929 in cash.  They also stole approximately twenty-four Apple iPhones, two Apple iPads, six Google Pixels, one Kyocera smartphone, six LG smartphones, three Motorola smartphones, seventeen Samsung smartphones, three Hum by Verizon

---

[1] All times set forth herein are adjusted to the local time where the event(s) occurred.

digital devices, an Elipsis tablet, with an estimated retail value of $38,080.38.[2]

        c.    A civilian in the vicinity of the Verizon store observed the suspects entering a white, four-door sedan after the robbery.  The civilian followed the white sedan for a short distance and obtained the license plate number.  Upon further investigation by Detective Harkey, it was determined that the white sedan was a rental car that had been rented by Ashley Franklin.

        d.    When Detective Harkey interviewed Franklin, Franklin stated that she had rented the car at the request of ZACHARY WADE, who is her brother-in-law.  Earlier that day, Franklin had driven WADE to two different Verizon retail stores because WADE claimed his cellular telephone needed repair.

    **B.    TATE and PETTYWRIGHT are Arrested in Glendale, California on February 1, 2018**

    6.    Based on my personal participation in the investigation, I know the following:

        a.    On or around January 19, 2018, the Honorable Karen E. Scott, United States Magistrate Judge, issued a warrant

---

[2] Based on my training and experience, I know that digital devices manufactured by these companies travel in interstate and foreign commerce before they are sold in California.  I further know that cellular telephone retail stores service customers from outside of California.  Based on public source research, I learned that Verizon is headquartered in Basking Ridge, New Jersey.

authorizing the disclosure of GPS location data related to a cellular telephone believed to be used by WADE.[3] No. SA 18-012M.

      b.   On January 31, 2018, based on information provided to me by SA Korn and members of the Tucson Police Department, I learned that a black Dodge Journey with California license plates was parked at an apartment complex where WADE's cellular telephones appeared to be located. I determined that the Dodge Journey was a rental car and was rented to Myrna Palay. I recognized Palay's name as associated in public records databases with an address in Long Beach, California that I had learned of during his investigation. According to GPS location data, in late January 2018, WADE frequently stayed at that Long Beach, California address.

      c.   After learning of the January 31, 2018 robbery, I examined GPS location data from WADE's cellular telephone at or around the time of the robbery. I determined that at 6:56 p.m., WADE's cellular telephone was approximately two miles west of the robbery location. At 7:11 p.m., WADE's cellular telephone was within eight meters of the parking lot associated with the robbery location. By 7:26 p.m., WADE's cellular telephone traveled to the vicinity of a Days Inn.

---

[3] WADE is currently under investigation for his involvement in six armed robberies of Verizon retail stores in the southern California area.

On February 2, 2018, WADE made his initial appearance before the Honorable Douglas J. McCormick, United States Magistrate Judge, on a criminal complaint charging him with conspiracy to interfere with commerce by robbery arising out of his participation in the Tucson robbery. No. SA 18-029M.

d.   On the morning of February 1, 2018, I determined through GPS data that WADE was returning to the southern California area and ultimately traveling toward Glendale, California.

e.   I relayed to local law enforcement GPS location data as well as information concerning the black Dodge Journey WADE was suspected of driving.  Based on that information, a law enforcement air ship tracked WADE to a parking lot at a hotel in Glendale, California.

7.   Based on my personal participation in the investigation, and my conversations with ATF SA Ryan Averill and Glendale Police Department Detective Donald Tucker, I learned the following:

a.   Surveillance video from the hotel parking lot depicts WADE transferring two black duffel bags from the black Dodge Journey to a white Chevrolet Cruz sedan.

b.   Officers conducted an investigatory stop of both vehicles based on information I and others relayed to them.  At that point, WADE was a passenger in the white Chevrolet Cruz. TATE and PETTYWRIGHT were both inside the black Dodge Journey, which remained parked in the parking lot of the hotel.

c.   On February 1, 2018, the Honorable John D. Early, United States Magistrate Judge, authorized warrants to search the white Chevrolet Cruz and the black Dodge Journey.[4]  ATF SA Ryan Averill was present when those warrants were executed.  SA

---

[4] Judge Early also authorized a warrant to search the residence in Long Beach associated with Myrna Palay.

Averill advised me of the contents of the vehicles.  I also
reviewed photographs of items recovered during the searches.

      d.    Inside of the white Chevrolet Cruz, law
enforcement recovered two black duffel bags with dozens of
smartphones and tablets that appeared to be brand new and
wrapped in original packaging.[5]  While law enforcement review of
IMEI numbers associated with those digital devices is ongoing,
it has already been determined that several can be traced back
to the Verizon store in Tucson.  Officers also recovered a blue
cash bag containing approximately $40,000 in cash.

      e.    Inside of the black Dodge Journey that TATE and
PETTYWRIGHT were inside at the time of their arrest, law
enforcement recovered the following:

      i.    A backpack with various documents in
PETTYWRIGHT's name.  The backpack contained a Walmart shopping
bag with a beanie and gloves.  The backpack also contained tan
pants and blue Nike shoes consistent with those worn by one of
the suspects during the Tucson robbery;

      ii.    A maroon hooded sweatshirt that appears
consistent with clothing worn by one of the suspects during the
robbery; and,

      iii. Newly packaged underwear and socks.

    8.    Based on my conversations with the Tucson Police
Department, and surveillance photographs and video provided to
me, I learned the following:

---

    [5] The black duffel bags are consistent with those carried by
the suspects during the robbery.

a.    On January 31, 2018, before the Tucson robbery, surveillance footage from Walmart, located at 7150 E. Speedway Boulevard, Tucson, Arizona, depicts TATE, PETTYWRIGHT, WADE, and Franklin entering Walmart and making separate purchases.[6]

b.    TATE purchased underwear and socks consistent with those recovered from the black Dodge Journey on February 1, 2018.

c.    PETTYWRIGHT purchased zip-ties (described on the receipt as cable ties).  As discussed in paragraph 5(a), above, the suspects zip-tied the hands and feet of the Verizon employee during the robbery.

d.    The surveillance video depicts TATE and PETTYWRIGHT wearing clothing that appears to be identical to the clothing worn at the time of their arrest in Glendale. PETTYWRIGHT was wearing a sweatshirt with "LONG BEACH" written in large letters on the front.

9.    Based on my review of a recorded, <u>Mirandized</u> interview of TATE conducted on February 1, 2018, I learned that TATE admitted to being in Arizona on January 31, 2018, and that he was inside of a white rental car while in Arizona.  As described in paragraph 5(c), above, a white rental car was used to drive the suspects away from the robbery after it was completed.

---

[6] GPS data shows that WADE's cellular telephone was in or near the parking lot of this Walmart at the time WADE, TATE, and PETTYWRIGHT were captured on surveillance video.

C.    Criminal History

10.    I reviewed an NCIC database query and learned that TATE has the following felony convictions in the State of California:

a.    Three counts of robbery, in violation of PC 211, on or around August 21, 2008, for which he received a sentence of five years' prison;

b.    Second-degree robbery, in violation of PC 212.5, on or around July 28, 2011, for which he received two years' prison.

11.    I reviewed an NCIC database query and learned that PETTYWRIGHT has the following felony conviction in the State of California:

a.    Robbery, in violation of PC 211, on or around May 19, 2006, for which he was sentenced to 365 days' jail.

12.    Based on the same report referenced in the previous paragraph, I learned that PETTYWRIGHT was arrested for attempted murder, in violation of PC 187, and second degree robbery, in violation of PC 212.5, on or around June 4, 2008.  The report does not list the disposition.  PETTYWRIGHT was also arrested for robbery, in violation of PC 211, on or around May 15, 2009. Again, the disposition is not listed.

## IV. CONCLUSION

For all the reasons described above, I respectfully submit that there is probable cause to believe TATE and PETTYWRIGHT

//

//

9

have violated 18 U.S.C. § 1951(a) by conspiring to interfere
with commerce by robbery.

_____/S/_____
Ryan J. Stearman, Special
Agent, Bureau of Alcohol,
Tobacco, Firearms & Explosives

Subscribed to and sworn before me
this ___ day of February, 2018.

## Jay C. Gandhi

HONORABLE JAY C. GANDHI
UNITED STATES MAGISTRATE JUDGE